123 T.C. No. 8


UNITED STATES TAX COURT


LAWRENCE G. WILLIAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10314-02, 3262-03.     Filed July 22, 2004.


     P filed for bankruptcy on Dec. 3, 1990, at which
time he owned all of the shares of two S corporations.
Both S corporations sustained operating losses for
1990.  P reported the pro rata portion of the 1990
losses attributable to the prebankruptcy period on his
individual tax return for 1990, resulting in a net
operating loss, which he carried forward through 2000.
P was discharged in bankruptcy in 1997.  R disallowed
the losses and issued notices of deficiency for 1996-
2000.

     1.  <u>Held</u>:  Where P, an individual S corporation
shareholder, filed for bankruptcy before the
corporation's yearend, operating losses sustained by
the corporation during the year in which he filed for
bankruptcy are reported by the bankruptcy estate, not
P, because income or loss of an S corporation is
determined as of the last day of the corporation's
taxable year.

2. Held, further, net operating losses to which P succeeded upon discharge in bankruptcy must be reduced by the amount of discharge of indebtedness income that, pursuant to sec. 108(b)(2), I.R.C., was excluded from his gross income as a result of his bankruptcy discharge.

3. Held, further, P is not liable for the accuracy-related penalty under sec. 6662(a), I.R.C., for any year at issue.


Lawrence G. Williams, pro se.

Lydia A. Branche, for respondent.


KROUPA, Judge: Respondent determined deficiencies in petitioner's income taxes for the years 1996 through 2000 resulting from operating losses sustained by two S corporations in 1990 that petitioner reported on his individual tax return in 1990, the year in which petitioner filed for bankruptcy, and carried forward through 2000.[1] Respondent also determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for each year at issue.

The three issues for decision are:

(1) Whether petitioner or his individual bankruptcy estate (Estate) is entitled to report operating losses sustained during 1990 by two S corporations in which petitioner owned all of the shares as of the date of filing bankruptcy. We hold that the Estate, not petitioner, is entitled to report the losses.

---

[1]Petitioner originally filed a ch. 7 bankruptcy petition on Dec. 3, 1990, then converted it to a ch. 11 bankruptcy in 1991. The conversion is irrelevant for purposes of our analysis because secs. 108 and 1398 apply to both chapters if the debtor is an individual.

(2) Whether petitioner is entitled to report carryforward losses to which he succeeded upon termination of the Estate after his debts were discharged in bankruptcy. We hold that he is not.

(3) Whether petitioner is liable for each year at issue for the accuracy-related penalty under section 6662(a)[2] for substantial understatement of income tax. We hold that he is not.

FINDINGS OF FACT

These cases were submitted to the Court fully stipulated under Rule 122. The stipulation of facts and the accompanying exhibits are incorporated by this reference, and the facts are so found.[3] Petitioner resided in New York, New York, when he filed the petitions with this Court.[4]

Petitioner was a self-employed investment adviser for each year at issue. Petitioner owned all of the shares of two S corporations, Davidge & Co. (Davidge) and Kuma Securities (Kuma), until December 3, 1990, the date he filed for bankruptcy. The

---

[2]All section and subchapter references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Sec. 7491 is effective with respect to court proceedings arising in connection with examinations by the Commissioner commencing after July 22, 1998, the date the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, was enacted. Although the examinations for these cases began on Aug. 5, 1999, for 1996 through 1998 and on Apr. 4, 2002, for 1999 through 2000, these cases were submitted fully stipulated. Therefore, no facts are in dispute, and we decide these cases without regard to the burden-shifting rule of sec. 7491(a)(1).

[4]These two cases were consolidated for trial, briefing, and opinion in an order from this Court dated May 15, 2003.

shares of both corporations became property of his Estate at that time.[5]  Both corporations are calendar year corporations.

Petitioner used a $4 million loan from Citibank to finance the operation of Davidge.[6]  Davidge sustained an operating loss of $3,385,592 during 1990.  The Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc. (Schedule K-1), that Davidge issued to petitioner for 1990 showed that $3,125,875 (or 92.33 percent) of the loss for 1990 was allocated to petitioner.  This amount represents the pro rata portion[7] of Davidge's loss attributable to the period January 1 through December 3, 1990, the date petitioner filed for bankruptcy.  The remaining $259,717 (or 7.67 percent) of the loss for 1990 was allocated to the Estate.

Kuma sustained an operating loss of $155,593 during 1990.  Similarly, the Schedule K-1 Kuma issued to petitioner for 1990 showed that $143,898 (or 92.33 percent) of the loss for 1990 was allocated to petitioner.  This amount represents the pro rata portion of Kuma's loss attributable to the period January 1 through December 3, 1990, the date petitioner filed for bankruptcy.  The remaining $11,955 (or 7.67 percent) of the loss was allocated to the Estate.

---

[5]A debtor's assets, with exceptions not applicable here, become property of the bankruptcy estate when the debtor files the bankruptcy petition.  11 U.S.C. sec. 541 (2000).

[6]The record does not reflect financing information for Kuma. We assume that petitioner used portions of the Citibank loan to finance the operation of Kuma as well.

[7]The pro rata portion is computed by assigning to each day an equal share of the loss for the year.  Sec. 1377(a)(1).

- 5 -

Petitioner reported on his Federal income tax return for 1990 the pro rata share of the losses sustained by Davidge and Kuma.  The amounts that petitioner reported were attributable to the period January 1 through December 3, 1990, the date he filed for bankruptcy.  Petitioner carried forward losses from 1991 through 2000.[8]

Respondent determined that petitioner was not entitled to the losses sustained by Davidge or Kuma from January 1 through December 3, 1990, the date petitioner filed for bankruptcy. Accordingly, respondent disallowed the losses and carryforwards and issued two notices of deficiency covering the years 1996 through 2000.[9]  The deficiencies and accuracy-related penalties for the years at issue are as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
| --- | --- | --- |
| 1996 | $59,597 | $11,919 |
| 1997 | 63,679 | 12,736 |
| 1998 | 30,524 | 6,105 |
| 1999 | 27,166 | 5,433 |
| 2000 | 12,681 | 2,536 |

---

[8]The parties stipulated that petitioner made the election under sec. 172(b)(3) to forgo the carryback period and carry forward the losses.  The years 1990 through 1995 are not before us.

[9]The notice of deficiency for 1996, 1997, and 1998 was issued on Mar. 20, 2002, and the notice of deficiency for 1999 and 2000 was issued on Nov. 22, 2002.

Petitioner timely filed petitions with this Court contesting respondent's disallowance of the losses and liability for the accuracy-related penalty for each year at issue.

Petitioner received a discharge in bankruptcy on November 26, 1997. The $4 million Citibank loan was discharged.

OPINION

I. Whether Petitioner or the Bankruptcy Estate Is Entitled to the 1990 Losses

The Bankruptcy Tax Act of 1980, Pub. L. 96-589, sec. 3, 94 Stat. 3397, added section 1398 to eliminate uncertainty and litigation by detailing how Federal income tax attributes and liabilities are to be allocated between the bankruptcy estate and the individual debtor. See sec. 1398; see also S. Rept. 96-1035, at 8-13 (1980), 1980-2 C.B. 620, 623-626. Filing a bankruptcy petition creates a new taxable entity for Federal tax purposes, the bankruptcy estate, which is a separate and distinct taxpayer from the individual debtor. See 11 U.S.C. sec. 541(a) (2000); sec. 1398. The debtor continues as a separate taxable entity during the pendency of the bankruptcy proceeding. Sec. 1398. Section 1398 dictates whether the bankruptcy estate or the individual debtor reports income, deductions, and credits and when either taxpayer succeeds to the tax attributes of the other.

This is a case of first impression in which we must decide whether filing individual bankruptcy alters the rules that otherwise apply under subchapter S regarding the allocation and deductibility by an individual shareholder of losses of S corporations incurred in the calendar year in which the individual shareholder files for bankruptcy.

Respondent claims that the Estate is entitled to the entire loss generated by each of Davidge and Kuma for 1990 even though it did not own any shares of either corporation until December 3, 1990, the date petitioner filed for bankruptcy. Respondent contends that the Estate is entitled to the entire loss generated during 1990 because the Estate owned all the shares of Davidge and Kuma as of December 31, 1990, the corporations' yearend.

Petitioner counters that he is entitled to approximately 11 months' worth of the losses generated during 1990. Relying on section 1377(a)(1), which allocates each item of corporate income or loss pro rata on a per share per day of ownership basis, petitioner argues that he should be allocated that portion of the loss generated by each corporation during the time in 1990 that he owned all the shares of Davidge and Kuma; i.e., the portion attributable to the period from January 1 through December 3, 1990. Petitioner essentially argues that bankruptcy proceedings do not alter the rules for allocating income and loss to S corporation shareholders under section 1377. He reasons that the transfer of his shares in Davidge and Kuma to his Estate should be treated like any other disposition under section 1377 entitling him to receive a pro rata share of each loss.

We agree with respondent. Section 1398 specifically applies to individuals in bankruptcy and must be considered before applying the rules of section 1377 to S corporation shareholders in bankruptcy. Under section 1398(f)(1), a transfer of an asset from the debtor to the bankruptcy estate when the debtor files for bankruptcy is not a disposition triggering tax consequences,

and the estate is treated as the debtor would be treated with respect to that asset. Therefore, the Estate is treated as if it had owned all the shares of Davidge and Kuma for the entire year and, accordingly, is entitled to the entire loss that each of Davidge and Kuma generated during 1990, including the loss attributable to each corporation for the period January 1 through December 3, 1990.

Section 1398(e)(1) specifically addresses how income or loss should be allocated between the individual debtor and the bankruptcy estate. The bankruptcy estate is entitled to the individual debtor's items of income or loss from the bankruptcy commencement date under section 1398(e)(1) while any items of income or loss that the individual debtor received or accrued before filing for bankruptcy remain with the debtor.[10]

We find that petitioner did not receive or accrue any items of income or loss from Davidge or Kuma in 1990 before he filed for bankruptcy. Income or loss of an S corporation is determined as of the last day of the corporation's taxable year. We find that, because petitioner filed for bankruptcy before the last day of the S corporations' tax year, losses of the corporations for that year flow through in their entirety to the bankruptcy estate, and in no part to him.

We held similarly in the partnership context in Gulley v. Commissioner, T.C. Memo. 2000-190. In Gulley, we interpreted section 1398 as it pertained to a partnership interest of an

---

[10]The parties stipulated that petitioner did not elect to bifurcate the 1990 tax year into short, prepetition and postpetition, years pursuant to sec. 1398(d)(2).

individual partner who filed for bankruptcy.  At issue in <u>Gulley</u> was whether a partnership loss incurred during the year in which the individual partner filed for bankruptcy flowed through to the partner or his bankruptcy estate.  We held that the bankruptcy petition did not cause the partnership taxable year to close and that the prepetition losses flowed through to the bankruptcy estate, not the individual partner.

Our rationale in <u>Gulley</u> applies to these cases.  Although there are distinctions between partnerships and S corporations, none mandate a different result here from our opinion in <u>Gulley</u>.  Both S corporations and partnerships determine income or loss as of the last day of the entity's tax year.  See secs. 706(a), 1366(a).  The transfer of shares of an S corporation or a partnership interest to an individual bankruptcy estate when the debtor files for bankruptcy does not trigger tax consequences under section 1398(f)(1) and therefore does not require calculating items of income or loss as between the individual debtor and the estate.

In <u>Gulley</u> and in these cases, the bankruptcy estate held the entire interest in each respective entity as of the entity's tax yearend.  Neither the transfer by the taxpayer in <u>Gulley</u>, nor the transfer by petitioner, to his respective bankruptcy estate is a taxable disposition under section 1398(f)(1).  See also <u>Smith v. Commissioner</u>, T.C. Memo. 1995-406.  Accordingly, as in <u>Gulley</u>, the bankruptcy estate, not petitioner, is entitled to the income or loss of the S corporations.

In these cases, by operation of bankruptcy law, the shares of Davidge and Kuma became property of the Estate when petitioner filed his bankruptcy petition on December 3, 1990. Before that date, none of the loss generated by Davidge or Kuma during 1990 was distributable to petitioner. The Estate held the shares on December 31, 1990, the taxable yearend for both corporations. There was no taxable disposition, and the Estate is treated as petitioner would have been treated with respect to the shares of Davidge and Kuma under section 1398(f)(1). Thus, the corporations' losses flowed through to the Estate rather than to petitioner.

We next address petitioner's argument that, because subsection (g)(1) is the only subsection of section 1398 that deals specifically with losses, section 1398(g)(1) controls to entitle petitioner to the losses generated during the year in which he filed for bankruptcy. Petitioner reasons that the Estate succeeds solely to the debtor's net operating loss carryovers under section 172 "determined as of the first day of the debtor's taxable year in which the case commences". Sec. 1398(g). By focusing on the language "determined as of the first day of the debtor's taxable year in which the case commences" in section 1398(g)(1), petitioner argues that the Estate does not succeed to any loss Davidge or Kuma generated during the year in which petitioner filed bankruptcy.

Petitioner misconstrues section 1398(g)(1). While section 1398(g)(1) deals with losses, it deals only with carryover losses (i.e., losses generated before the year in which the individual

files for bankruptcy, not losses generated during the year in which the individual files for bankruptcy). The losses at issue here are losses generated during the year in which petitioner filed for bankruptcy.

For all the foregoing reasons, we hold that the Estate is entitled to report the losses Davidge and Kuma generated during the year in which petitioner filed for bankruptcy. Accordingly, we sustain respondent's determination in the notices of deficiency disallowing petitioner's losses from Davidge and Kuma in 1990.

## II. The Loss Carryforward After Discharge

We turn next to the issue whether petitioner is entitled to report carryforward losses. We begin with some fundamental principles. First, a bankruptcy estate can offset income it generates during bankruptcy with any of the debtor's operating losses to which it succeeds. See secs. 1398(e)(1) and (f)(1), 172(b)(2). Second, any loss the bankruptcy estate does not use in one year can be carried forward to offset income the bankruptcy estate generates in future years until termination of the estate or until the entire loss is expended or expires. Sec. 172(b)(2). Third, if a loss carryforward remains after the termination of the bankruptcy estate, the discharged debtor succeeds to the assets and tax attributes of the bankruptcy estate, including loss carryforwards. Sec. 1398(i).

While normally discharge of indebtedness income is taxable under section 61(a)(12), cancellation of indebtedness (COD) income realized as a result of a bankruptcy discharge is excluded

from gross income in the year of discharge under section 108(a). In exchange for this exclusion, certain tax attributes that pass to the debtor from the bankruptcy estate must be reduced by the amount of debt discharged. Sec. 108(b)(2). One such tax attribute is any remaining loss carryforward. Id.

Petitioner was discharged in bankruptcy in 1997. Instead of petitioner succeeding to any loss carryforward from the Estate in 1997, respondent argues that any loss carryforward must be reduced dollar for dollar by the amount of debt discharged. We agree.

The net operating loss that each of Davidge and Kuma sustained in 1990 flowed through on December 31, 1990, to the Estate, the sole shareholder at both S corporations' yearend. The Estate carried forward these losses through 1997, the year in which the bankruptcy proceedings terminated. When petitioner was discharged in bankruptcy, any remaining losses in the Estate would have passed to him under section 1398(i). However, the discharged $4 million Citibank loan created COD income that was excluded from petitioner's gross income under section 108(a). Thus, any loss carryforward--in this case, the loss approximating $3,500,000--otherwise available to petitioner upon the termination of the Estate is reduced dollar for dollar for the excluded COD income under section 108(b)(2). Therefore, any loss carryforward of the Estate to which petitioner succeeded was reduced to zero under section 108(b)(2)(A). Petitioner had no loss in 1997 to recognize in that year or to carry forward to subsequent years.

On the basis of the foregoing, we sustain respondent's determination in the notices of deficiency disallowing petitioner's loss carryforwards.

III. Accuracy-Related Penalty

We turn now to respondent's determination in the notices of deficiency that petitioner is liable for the accuracy-related penalty under section 6662(a) for each year at issue. Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent determined that petitioner is liable for the accuracy-related penalty for a substantial understatement of income tax under section 6662(b)(2) for each year at issue. There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.

Respondent has met his burden of production with respect to petitioner's substantial understatement of income tax. The following table demonstrates that petitioner understated his income tax for each year at issue in an amount greater than $5,000 or 10 percent of the tax required to be shown on his return.

| Year | Tax Reported | Required Tax | Understatement |
|------|-------------|--------------|----------------|
| 1996 | $700 | $60,297 | $59,597 |
| 1997 | 536 | 64,215 | 63,679 |
| 1998 | 4,463 | 34,987 | 30,524 |
| 1999 | 11,846 | 39,012 | 27,166 |
| 2000 | 9,673 | 22,534 | 12,681 |

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances, the most important of which is the extent of the taxpayer's effort to assess his proper tax liability for the year. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of law that is reasonable in light of all of the facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs.

While the Commissioner bears the burden of production under section 7491(c), the taxpayer bears the burden of proof with respect to reasonable cause. Higbee v. Commissioner, supra at 446. The mere fact that we have held against petitioner on the substantive issue does not, in and of itself, require holding for respondent on the penalty. See Hitchins v. Commissioner, 103 T.C. 711, 719-720 (1994) ("Indeed, we have specifically refused to impose * * * [a penalty] where it appeared that the issue was

one not previously considered by the Court and the statutory language was not entirely clear.").

We agree with petitioner that he made a reasonable attempt to comply with the Internal Revenue Code. Because this is a case of first impression, there was no clear authority to guide petitioner as to the complex and overlapping issues of tax and bankruptcy law. We note that respondent has not referred us to nor have we found any cases that have previously answered the questions before us. Petitioner had an honest misunderstanding of the law, and the position petitioner took was reasonably debatable. Accordingly, in light of all the facts and circumstances, we find petitioner acted reasonably and in good faith with respect to the underpayment for the years at issue and is not liable for the accuracy-related penalties under section 6662(a).

We have considered the other arguments of the parties and, to the extent not discussed above, we conclude that the arguments are irrelevant, moot, or meritless.

To reflect the foregoing,

> Decisions will be entered for respondent with respect to the deficiencies and for petitioner with respect to the penalty under section 6662(a).